SMITH v. GOULD et al.

(District Court, S. D. New York. March 22, 1905.)

WHARVES—INJURY OF VESSEL ON SUNKEN ROCK—LIABILITY OF WHARF OWNER.
Respondent, as owner of a wharf, *held* liable for the sinking of a steam canal boat which struck a rock under water in moving to a place alongside the wharf designated by respondent's authorized agent for the purpose of unloading a cargo for respondent.

In Admiralty. Action for injury to vessel at wharf.

Martin A. Ryan, for libellant.

Nathaniel Cohen and Charles M. Hough, for Howard Gould.

Robinson, Biddle & Ward, for John C. Udall and the Abbot-Gamble Contracting Company.

ADAMS, District Judge. This action was brought by John A. Smith, the owner of the steam canal boat William Spencer, to recover the damages he sustained through the sinking of the boat in the vicinity of a wharf belonging to Howard Gould, at Sands Point, Long Island. The respondents John C. Udall and the Abbot-Gamble Contracting Company, were doing some work for Gould at his place there and the boat went to the wharf to deliver to them some 1000 barrels of cement, to be used in the work. The boat arrived at the wharf on the 22nd day of April, 1902, and was placed at one end thereof and discharged some of her cargo, but that being a dangerous place, owing to a load of brick having been dumped at that point, she was moved to the easterly side of the wharf, near the end.

The contention on the part of the libellant is, that the dock master, employed by Gould, directed him where to go and he was endeavoring to reach the place indicated when his boat struck a rock, receiving the injury complained of. The respondent Gould contends that no such instructions were given but, on the contrary, the orders were for the boat to go to an offing, about 600 feet from the end of the wharf. There is no evidence to implicate the respondents Udall or the Abbot-Gamble Company and the controversy turns upon the credence to be given to the witnesses concerning the claim against Gould.

The libellant, the master of the boat, testified that the wharf was T shaped and he first went to the outer end. There were some other boats lying at the wharf, one, a schooner loaded with brick, at the eastern end of the T. After the libellant had removed some of his load at the first place, he was ordered by the respondent Gould's dock master, to the eastern side, back of the T, and assured by him that although there were some rocks on that side, there was room enough for his boat, about 100 feet long, at the place indicated. The master then asked the dock master where the rocks were, and had their locations pointed out to him. He marked the places on the wharf, and finding there was room enough for his boat, he started her around the schooner to the designated berth, the dock master assisting, but had not gone far inside of the T when his boat brought up on the port side of the bow upon a rock from which he was unable to move her and she there received the

injuries. The rock was about 85 or 90 feet from the shore side of the 'T' and about 15 to 18 feet from the side of the wharf. The tide was ebbing at the time and fell about 2 feet after the boat struck. There were about 2½ feet of water over the rock when the boat first struck. At high tide, the boat was nearly covered with water when she sank.

The libellant's testimony is opposed by the testimony of the dock master only. He testified that he directed the master of the Spencer to haul to the offing mentioned and anchor there before low tide in order to avoid the bricks dumped at the end of the wharf; that she was at the wharf at 12 o'clock, when he, the dock master, left for his dinner; that when he came back at 1 o'clock, she was still there and started to move to the east side at a quarter before 2 o'clock; that when the Spencer commenced to move around the wharf, it was obvious to the witness that she was going to a dangerous place and he told the master that he went there at his own risk; that he never advised nor directed the master of the Spencer to go to the east side of the wharf, nor assisted him by taking a line; that he did not notice the master of the Spencer making any chalk marks on the wharf; he also denies that he, the witness, was ever notified that there were rocks on the east side of the wharf but that one of the other persons on the wharf said it would be advisable for the Spencer to haul to the place the boat was injured.

If the determination of the question of the responsibility of the respondent Gould turned upon the testimony of these two witnesses, it might be difficult to decide whether there should be a recovery, although it appears that the testimony of the libellant, apart from his interest, was the more reliable. Whatever doubt there may have been, however, is removed by the testimony of several other witnesses produced by the libellant, who sustain his contention. His own engineer testified in support of the libellant and three other witnesses said they heard the dock master give directions for the Spencer to go to the place on the east side of the wharf where she was injured. One of these men warned the dock master that it was not a safe place for the boat to go to but the dock master said it was all right there.

It appears that this dock master had only been there a few days and actually knew nothing about the rock but he assumed to know and the injury followed. He was there in authority over the vessels going to the wharf and they were justified in obeying his instructions. The testimony seems to make a clear case against the respondent Gould but suggests no neligence by the other parties to the action.

There is a question, whether the libellant exercised due diligence in endeavoring to minimize the extent of his damages but that can be determined by the commissioner.

Decree against the respondent Gould, with an order of reference. The libel is dismissed as to the respondents Udall and the Abbot-Gamble Company.